Complainant is the widow of Herbert S. Woehr. By her bill she seeks to restrain payment of insurance on her husband's life to the defendant Anna Reehle and to compel payment to her. Complainant and Mrs. Reehle each hold certificates under group insurance policies issued by The Travelers Insurance Company, of Hartford, Connecticut, insuring employees of New York Shipbuilding Corporation, Mr. Woehr's employer. The employer was not made a party to these proceedings. The insurance company filed an answer to which was annexed a counter-claim of interpleader. It admitted that $3,000 became payable by it upon the death of Mr. Woehr and it deposited that sum in court. An interlocutory decree was entered discharging the insurance company and directing complainant and the defendant Anna Reehle to interplead.
Two group insurance policies are involved. On January 24th, 1935, the insurance company issued policy No. G 8000, effective April 1st, 1934, to Cord Corporation and/or its subsidiaries and affiliated companies. Herbert S. Woehr was then an employee of New York Shipbuilding Corporation and that company was an affiliate of Cord Corporation. In accordance with the terms of the policy and the applicable New Jersey statute a certificate of insurance, No. B 476, was issued and delivered to Mr. Woehr. This certificate was, by him, given to his wife; Mrs. Woehr was the named beneficiary; $2,000 was the initial amount of insurance. Pertinent provisions of the policy were stated in the certificate as, for instance, "Payment of the amount of the Employee's insurance under said policy shall be made to the beneficiary designated by the Employee provided death shall occur while the group policy shall remain in force and (a, while the Employee is insured thereunder in accordance with the terms, conditions and provisions thereof," * * *); the employee had the right to change the beneficiary; the amount of insurance in force on the life of the employee was to be determined by the plan of insurance specified in the group life policy; the insurance of any employee terminated when his employment with the employer terminated, when he was pensioned *Page 40 
or retired, or prior thereto when the employee ceased to pay to the employer the required amount to apply toward the premium; the insured employee was permitted, in case of termination of employment, to convert the insurance to any one of the forms of life insurance customarily issued by the company except term insurance, in an amount equal to the amount of his protection under the master policy at the time of the termination of his employment. The certificate also contained a summary of the plan of insurance which, among other things, provided for increased insurance in the event of increased weekly earnings.
Mr. Woehr continued his employment with New York Shipbuilding Corporation. In 1938 he received a printed notice from the insurer advising him that as of January 1st, 1938, the insurance upon his life had been increased to $2,500. This notice he gave to his wife.
Complainant testified that in September, 1939, Mr. Woehr deserted her and their three children and that he thereafter lived apart from them. He died April 16th, 1942.
An attempt was made to change the beneficiary under policy G 8000 and a new certificate of insurance was issued by the insurer January 1st, 1938. It was identical in form with that first issued; it bore the same number, B 476; the amount of insurance certified was $2,500; the beneficiary named was "Mrs. Anna Reehle — friend." The master policy permitted a change of beneficiary. It provided: "Any Employee insured hereunder may designate a new beneficiary at any time by filing with the Employer a written request for such change on forms furnished by the Company, but such change shall become effective only upon receipt of such request at the appropriate Office of Record of the Employer as specified in the Plan of Insurance contained in the Application attached hereto."
This court has approved the application to group insurance questions of certain rules established with respect to ordinary life insurance contracts. It has been held: The insured employee's designated beneficiary, named in the certificate of insurance issued under a group policy, has a vested interest in the insurance moneys agreed to be paid upon the death of *Page 41 
the employee, which interest may not be divested except as specifically provided for in the master policy; one who makes claim to the insurance moneys by virtue of an alleged change of beneficiary must carry the burden of proving that the substitution was permitted by the policy and that the change was made in strict compliance with the terms of the policy. Koczot
v. Travelers Insurance Co. (Vice-Chancellor Egan), 130 N.J. Eq. 106; 21 Atl. Rep. 2d 300.
In the instant case Mrs. Reehle has not successfully borne the burden of proof imposed upon her. No testimony was offered to establish the execution by Mr. Woehr, or the receipt by his employer, of a written request for change of beneficiary. It did appear by the testimony that no written request of Mr. Woehr for change of beneficiary on the form prescribed by the insurance company could be found in the files of New York Shipbuilding Corporation. A legal change of beneficiary has not, therefore, been established.
Master policy No. G 8000 contained a provision that each insured employee would be required to pay a stipulated portion of the premium payable for his insurance. Such payments were, in fact, deducted by the employer from the earnings of insured employees and transmitted to the insurance company. The premium to be paid was fixed upon an ascertainment of average risk for all employees of Cord Corporation and its designated subsidiaries and affiliates. In or about the year 1940 an investigation indicated that a saving could be effected in the cost of insurance upon employees of New York Shipbuilding Corporation provided they were insured as a group separate and apart from employees of the other associated companies. As a result, the insurance company, on February 4th, 1941, issued to New York Shipbuilding Corporation policy of group insurance No. G 9510, covering only employees of the latter corporation. This second master policy was made effective as of February 1st, 1941, and was in force at the time of the death of Mr. Woehr. In terms and conditions this policy was identical with the first policy.
Proof of the facts surrounding the substitution of the second policy for the first was incomplete. It did appear *Page 42 
with certainty that the original insurance record cards of all employees were delivered to the insurance company by the employer; that the insurance company prepared, at Hartford, Connecticut, new certificates of insurance (presumably from the record cards); and that when the record cards were returned to the employer they, together with all other records of insurance upon employees under policy G 8000 except the employer's photostatic copy of that policy, were destroyed by burning.
February 1st, 1941, the insurance company issued a certificate of insurance under policy No. G 9510. The same printed form was used as for the certificates issued under policy No. G 8000. The new certificate recited that the life of Mr. Woehr was insured for $2,500 in favor of "Anna Reehle — friend." August 11th, 1941, the insurance company issued a certificate of increased insurance. This fourth certificate was numbered AB 476; the named beneficiary was "Anna Reehle — friend;" the amount of insurance was $3,000. These two certificates under the later policy, No. G 9510, were in the possession of Mr. Woehr until three days before his death. He died in a Philadelphia, Pennsylvania, hospital where he was taken in an automobile by the defendant Anna Reehle and Emma H. Stuber. It was their testimony that on the way to the hospital Mr. Woehr handed Mrs. Reehle a locked metal box and a key. Following the death of Mr. Woehr, Mrs. Reehle opened the box. In it she found the two certificates of insurance under policy G 9510 in which she was named the beneficiary. She produced them in court.
Having determined that a change of beneficiary was not legally effected by Mr. Woehr in his lifetime, under policy No. G 8000, there remains for consideration the effect, on the rights of the respective claimants herein, of the issuance of a new master policy.
Group insurance is a comparatively recent innovation in the insurance field. The contract is peculiar in that it is made by the insurer and the employer or someone in an analogous position, instead of directly between the insurer and the employee. A further peculiarity of group insurance is that the policy runs to the employer and under it certificates *Page 43 
of insurance are issued by the insurer and transmitted to the employer for delivery to the insured employee. Consideration of these and other characteristics of group insurance by the courts of the several states has resulted in the declaration of widely variant concepts and the promulgation of equally variant rules. Furthermore, some states have enacted statutes which provide regulations for group insurance apart from the general laws on insurance, and the provisions of these statutes are reflected in the decisions of those states. 29 Am. Jur. tit. "Insurance," §301, c.; Crawford Harlan, Group Insurance, ch. VII; 49 TheYale Law Journal 585; Annotations, 55 A.L.R. 1245-47;63 A.L.R. 1034; 85 A.L.R. 1462; 105 A.L.R. 430, and 142 A.L.R. 1288.
In New Jersey group insurance questions have not been submitted to the test of court decision except in a few instances. The only reported cases I have found are: Arment v. Metropolitan LifeInsurance Co. (Supreme Court), 8 N.J. Mis. R. 100;149 Atl. Rep. 35; Venditto v. Spratt's Patent (America), Ltd.
(Supreme Court), 113 N.J. Law 357; 174 Atl. Rep. 697;Metropolitan Life Insurance Co. v. Poliakoff (Court ofChancery), 123 N.J. Eq. 524; 198 Atl. Rep. 852; Woodrow v.Travelers Insurance Co. (Court of Errors and Appeals),121 N.J. Law 170; 1 Atl. Rep. 2d 447; Ambrose v. MetropolitanLife Insurance Co. (Supreme Court), 18 N.J. Mis. R. 42;10 Atl. Rep. 2d 479; Koczot v. Travelers Insurance Co.
(Court of Chancery), supra; Mariotti v. Metropolitan LifeInsurance Co. (Court of Errors and Appeals),122 N.J. Law 360; 5 Atl. Rep. 2d 759.
The legislature of New Jersey considered group insurance in 1927 and enacted a supplement to the act providing for the regulation and incorporation of insurance companies and regulating the transaction of insurance business. P.L. 1927ch. 53; R.S. 17:34-31, c. This statute provided that no policy of group life insurance might be issued or delivered in New Jersey unless it contained certain stipulated provisions. One of these was that "the policy, the application of the employer, and the individual applications, if any, of the employees of the insured, shall constitute the entire contract *Page 44 
between the parties * * *." Another was that the insurance company should issue to the employer, for delivery to the insured employee, "an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable," c.
In Metropolitan Life Insurance Co. v. Poliakoff, supra, this court held that parties to a contract of group insurance are three — the insurer, the employer and the insured employee. InWoodrow v. Travelers Insurance Co., supra, our Court of Errors and Appeals held that the certificate of insurance provided for in the master policy and given to the insured employee is an integral part of the written contract. InMariotti v. Metropolitan Life Insurance Co., supra, it was contended that cancellation of a group policy could not be lawfully effected without the consent of the employee. Our Court of Errors and Appeals found it unnecessary to pass upon this contention, but declared: "Whether the policy was or was not canceled the employer had the right, as against the insurer, to discontinue the payment of premiums; and with such discontinuance, subject to the period of grace, the insurance ended." It was also held that termination of a group policy terminates the individual's certificates issued thereunder. The court concluded that any dispute as to whether the employer, in the case before it, had the authority to effect cancellation of the policy had become moot for the reason that the employee died six weeks after the expiration of the period of grace fixed by the master policy. In Venditto v. Spratt's Patent
(America), Ltd., supra, our Supreme Court held that the group policy involved was a term policy and that it had expired before the death of the insured employee. Mr. Justice Parker for the court said: "What defendant did was to let the group policy expire by limitation as to Venditto, whom it considered, rightly or wrongly, to be no longer `employed.' Defendant had the right to allow such expiration: so far as appears, defendant was under no obligation to renew. With this, neither the thirty-one-day grace to pay premium nor the thirty-one days allowed a former employee had anything to do." These declarations by our courts are apt to the facts in the present case. *Page 45 
It is true that from April 1st, 1934, to the date of his death Mr. Woehr was continuously insured by Travelers Insurance Company as an employee of New York Shipbuilding Corporation. This result was, however, accomplished through two successive contracts of insurance, and the parties to those contracts were not the same. In the first instance the contract was made between the insurance company and Cord Corporation. Later, because of some corporate adjustment, Aviation Corporation was substituted for Cord Corporation. Then, as I have commented, it was determined that the cost of insuring the employees of the New York Shipbuilding Corporation could be materially reduced if only those employees were insured. So, the second contract was made by the insurance company with New York Shipbuilding Corporation.
Mr. Woehr was informed that the old contract of insurance had been terminated and that a new contract had been made. Notices of the insurance change were posted about the plant of the shipbuilding corporation and Mr. Woehr accepted and held the two certificates issued under the new policy. He benefited financially by the transaction; premiums to be paid by him were reduced in amount, and he received a credit on account of future premiums to be paid under the new policy because of greater payments already made under the old policy.
The certificate under which complainant makes her claim was issued "under and subject to the terms, conditions and provisions" of policy G 8000. The certificate of increased insurance, held by complainant, also recited that such increase was "subject to the terms and conditions" of the master policy. Those terms and conditions, in part, were: "This policy is issued in consideration of the application of the Employer, which is made a part hereof and a copy of which is attached hereto, and of the payment of the premium due on the effective date hereof and of the further payment of premiums becoming due thereafter, as hereinafter provided.
"This policy shall be effective from the 1st day of April, 1934, for a term of one year beginning and ending at 12:01 A.M., standard time at the Employer's address, from which *Page 46 
date all insurance years and months shall be computed, and may, subject to the payment of premiums, be renewed from year to year as hereinafter provided."
"A grace of thirty-one days during which the policy will remain in full force will be allowed for the payment of all premiums except the first."
Policy No. G 9510 was, by its terms, made effective from the first day of February, 1941. After that date no premiums were paid on the original policy, G 8000 and that policy and the certificates held by complainant became ineffective upon the expiration of the period of grace.
Complainant stresses the fact that the original certificate of insurance in which she was named the beneficiary and the first certificate of insurance issued under the second policy in which Mrs. Reehle was named the beneficiary, bear the same number, B 476. While it is a fact that these two certificates bear the same number, it is also a fact that the two master policies bear distinctively different numbers. More important, however, the certificates under which Mrs. Reehle claims contain this plain statement: "Group Life Policy No. G 9510 replaces Group Life Policy No. G 8000 and this Certificate replaces and is accepted in lieu of any and all Certificates previously issued for delivery to the Employee under Group Life Policy No. G 8000." The certificates carrying this statement were delivered to Mr. Woehr and retained by him until shortly before his death. It must be concluded that he acquiesced in and accepted the substitution.
When a policy of insurance "replaces" another policy of insurance, the first policy is superseded, and the "replacing" policy must be regarded as the only subsisting contract, especially where, as here, it is in all respects a complete contract. Certainly the provisions of a superseded or "replaced" policy can not prevail over the provisions of the "replacing" policy when the two are in conflict. If this were not so, there could be no purpose served by the replacement. The very idea of replacing implies the termination of the thing replaced and the substitution of another; the two things can not remain in force and effect simultaneously. In this particular the concept of replacing differs from that of amendment. *Page 47 
In the case of amendment, the thing amended retains vitality, but with specified changes or modifications; in the case of replacement, the thing replaced is discarded, as it were, and an entirely new thing takes its place; replacement is vital in itself — no life is carried over from the thing displaced.
For the reasons given I shall advise a decree directing payment of the insurance moneys in question to the defendant Anna Reehle. *Page 48